UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONVOYANT LLC,<br><br>              Plaintiff,<br><br>   v.<br><br>DEEPTHINK, LLC,<br><br>             Defendant. | CASE NO. C21-0310JLR<br><br>ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Defendant DeepThink, LLC's ("DeepThink") motion for partial summary judgment. (Mot. (Dkt. # 15); Reply (Dkt. # 21).) DeepThink seeks dismissal in full or in part of twelve of Plaintiff Convoyant LLC's ("Convoyant"[1]) fifteen

---

[1] DeepThink does business under the name ThinkReservations and Convoyant does business under the name ResNexus. (*See* Mot. at 1.) DeepThink generally uses the parties' d/b/a names in its briefing, while Convoyant generally uses the parties' corporate names. (*See generally* Mot.; Resp.) In this order, the court refers to the parties as DeepThink and Convoyant, and to the parties' products as ThinkReservations and ResNexus.

ORDER - 1

1  claims. (*See* Mot. at 1.) Convoyant opposes the motion. (Resp. (Dkt. # 17); Surreply

2  (Dkt. # 22).) The court has considered the motion, all submissions filed in support of and

3  in opposition to the motion, the relevant portions of the record, and the applicable law.

4  Being fully advised,[2] the court GRANTS in part, DENIES in part, and DEFERS in part

5  DeepThink's motion.

## II. BACKGROUND

Below, the court sets forth the factual and procedural background of this case.

### A. Factual Background

Convoyant and DeepThink compete in the hospitality management software industry. (*See* Aday Decl. (Dkt. # 16) ¶ 2.) Convoyant's ResNexus platform includes both public-facing and "back-office" services for the boutique hospitality industry (for example, bed and breakfasts, boutique hotels, and campgrounds). (J. Mayfield Decl. (Dkt. # 19) ¶¶ 2-3.) Convoyant refers to the lodging businesses that use its platform as "Subscribers." (*Id.* ¶ 3.) The ResNexus Online Booking Engine ("OBS") is the public-facing side of Convoyant's system. (*Id.*) Members of the public who are seeking lodging access the OBS using links on ResNexus Subscribers' websites. (*Id.*) The OBS allows Subscribers to display unit rates and availability and enables guests to make online reservations at the Subscribers' properties. (*Id.*)

The ResNexus Property Management System ("PMS") is the "back-office" system used by ResNexus's Subscribers to manage their lodging businesses. (*Id.*) The PMS

---

[2] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

portal enables Subscribers "to manage reservations, take phone reservations, check guests in and out, accept payments while the guest is on property, manage communications with current and prospective customers, manage marketing communications, take customer payments, manage communications with vendors, and store the personal data of customers." (*Id.*)  The PMS portal also provides Subscribers with access to product support information and announcements. (*Id.* ¶ 10.)  Convoyant asserts that its PMS system "contains valuable Convoyant-owned Private Data" including its "user interface and data layout, change logs, bug-fixes, new features to be released in beta testing, and institutional know-how with respect to the ResNexus platform, as well as other nonpublic, commercially sensitive information." (*Id.* ¶ 5.)  ResNexus also contains Subscribers' private information, including guest lists, reservation information, and financials. (*Id.* ¶ 8.)  Accordingly, Subscribers must maintain usernames and passwords to access the PMS for each account and agree to abide by a Subscriber Agreement that prohibits them from allowing third parties to access the system or its content. (*Id.* ¶¶ 3, 7; *see* Compl. (Dkt. # 1) Ex. F ("Subscriber Agreement") at 1.)

DeepThink's ThinkReservations hotel management and booking engine software competes with Convoyant's ResNexus platform. (Aday Decl. ¶ 2.)  According to DeepThink, Convoyant makes it difficult for a Subscriber to transition its business from ResNexus to ThinkReservations. (*Id.* ¶ 4.)  DeepThink states that in 2013, it logged into the ResNexus account of a Subscriber to obtain customer data necessary for the Subscriber's transition to ThinkReservations. (*Id.* ¶ 3.)  Because the process of manually transferring the data was "arduous," DeepThink "created an automated program to obtain

a Subscriber's customer data, sufficient to transfer services from ResNexus to ThinkReservations." (*Id.* ¶ 4.) The parties refer to this automated software as "scraping" the ResNexus website. (*Id.*; *see also* J. Mayfield Decl. ¶ 12.)

Leading up to May 2018, Convoyant and DeepThink submitted competing bids to the Kentucky Tourism Association ("KTA") to build a website that included a user interface that updated availability for lodging. (J. Mayfield Decl. ¶ 19.) Convoyant's bid included only those properties that were in the ResNexus system. (*Id.*) Convoyant soon learned that DeepThink's system was using automated scraping tools to scrape the public-facing OBS to find Subscribers' availability and pricing. (*Id.*) Convoyant founder and Vice President James Mayfield instructed Convoyant's counsel to "request that Deep[T]hink stop using automated scraping tools and to stop scraping data from publicly available databases and websites." (*Id.* ¶ 21.) DeepThink's Chief Executive Officer ("CEO") Richard Aday asserts that Convoyant sent DeepThink a letter in May 2018 demanding that it stop scraping data from the ResNexus website; James Mayfield states that he "do[es] not know" if the unsigned letter attached to Richard Aday's declaration "was actually delivered to Deep[T]hink." (*See* Aday Decl. ¶ 6, Ex. A ("May 2018 Letter");[3] J. Mayfield Decl. ¶ 21.) In relevant part, the May 2018 Letter states,

> It is improper and actionable for ThinkReservations to indicate to the KTA that they have permission to seamlessly gather ResNexus availability/information on behalf of ResNexus clients in an effort to gain an advantage in the bidding process.

---

[3] As discussed in more detail below, the court denies Convoyant's motion to strike the May 2018 Letter.

ORDER - 4

> Furthermore, ThinkReservations has been gathering ResNexus's client information off of its website and website products for commercial use and for its own financial gain. In the nomenclature of the industry, this is called "scrapping [sic] a website." This is a clear violation of the Terms of Use conditions contained in ResNexus's website which anyone accessing the website must agree to.

(May 2018 Letter at 1-2.)

DeepThink responded through counsel on June 7, 2018. (*See* Reed Decl. (Dkt. # 22) ¶ 2, Ex. A ("June 2018 Letter").[4]) In relevant part, that letter states:

> ThinkReservations has never "indicated" to others that it is in a partnership or informal understanding with ResNexus, and ThinkReservations is not scraping Re[s]Nexus's website in violation of the web site's Terms of Use. With authorization, ThinkReservations has assisted customers in obtaining their own data from ResNexus's website (which the customers have a right to obtain).

(*Id.* at 2.)

In any event, according to James Mayfield, Convoyant was not aware in 2018 that DeepThink was scraping private password-protected Subscriber information stored in the PMS system as opposed to publicly-accessible property availability information. (J. Mayfield Decl. ¶ 21.) To the contrary, Convoyant asserts that it did not learn that DeepThink was scraping private information from ResNexus's PMS until fall 2020. In July 2020, Convoyant Vice President Nathan Mayfield and other Convoyant managers met on a video call with DeepThink's CEO Richard Aday and Chief Technology Officer ("CTO") Alfred Aday regarding a potential integration of the two companies' systems. (N. Mayfield Decl. (Dkt. # 20) ¶¶ 1-3.) According to Nathan Mayfield, discussions

---

[4] As discussed in more detail below, the court denies Convoyant's motion to strike the June 2018 Letter.

stalled when DeepThink wanted to remove a provision from the parties' agreement that would have prohibited DeepThink from scraping the ResNexus system. (*Id.* ¶ 4.)  In a September 24, 2020 telephone call, Nathan Mayfield explained to Richard Aday that Convoyant was concerned about companies scraping "back-office" information from the ResNexus system for commercial purposes. (*See* J. Mayfield Decl. ¶ 25, Ex. B (audio of September 24, 2020 call) at 2:55-4:10.)  He asked Richard Aday if DeepThink was scraping the ResNexus system. (*Id.* at 6:04-6:08.)  Richard Aday did not deny that DeepThink scraped the ResNexus system, and he told Nathan Mayfield that DeepThink logged in with the Subscriber's permission and extracted data. (*Id.* ¶¶ 5-6; *see* J. Mayfield Decl. Ex. B at 6:08-7:05.)  According to Convoyant, this was the first time it learned that DeepThink was scraping password-protected Subscriber data from its PMS. (Resp. at 12-13.)

C. **Procedural Background**

Convoyant filed its complaint on March 8, 2021. (*See* Compl.)  It alleges fifteen claims arising from DeepThink's alleged practice of scraping data from the ResNexus website. (*See generally id.*)  First, it seeks an injunction preventing DeepThink from "directly or indirectly scraping data" from ResNexus. (*Id.* ¶¶ 63-66.)  Second, it alleges that DeepThink violated the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.* (*id.* ¶¶ 67-79); Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701(A), 2510, and 2707 (*id.* ¶¶ 80-87); and Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* (*id.* ¶¶ 88-105).  Third, it alleges claims against DeepThink under both Washington and Utah common law for civil conspiracy (*id.* ¶¶ 106-12); tortious

interference with contract and/or business expectancy (*id.* ¶¶ 121-28); trespass to chattels (*id.* ¶¶ 138-45); and unjust enrichment (*id.* ¶¶ 146-53). Finally, it alleges statutory claims for violations of the Washington Uniform Trade Secrets Act ("WUTSA"), ch. 19.108 RCW (*id.* ¶¶ 113-16); Utah Uniform Trade Secrets Act ("UUTSA"), Utah Code § 13-24, *et seq.* (*id.* ¶¶ 117-20); the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW (*id.* ¶¶ 129-33); and the Utah Unfair Competition Act ("UUCA"), Utah Code § 13-5A-101, *et seq.* (*id.* ¶¶ 134-37). On April 1, 2021, DeepThink answered the complaint and asserted affirmative defenses. (Ans. (Dkt. # 8).)

On May 19, 2021, the court granted the parties' stipulated motion for injunctive relief. (5/19/21 Order (Dkt. #15); *see* Stip. Mot. (Dkt. # 14).) In relevant part, the parties agreed—and the court ordered—that DeepThink would be enjoined from scraping the ResNexus website and would destroy certain categories of Convoyant data in its possession. (*See generally* 5/19/21 Order.)

DeepThink filed the instant motion for partial summary judgment on October 14, 2021. (*See* Mot.)

### III.  ANALYSIS

DeepThink moves the court for summary judgment, in full or in part, on twelve of Convoyant's fifteen claims.[5] Convoyant opposes the motion and moves to strike three documents filed in support of DeepThink's motion and one document filed with

---

[5] DeepThink has not moved for summary judgment on Convoyant's claims for violations of the DTSA, the WUTSA, or the UUTSA. (*See generally* Mot.)

1  DeepThink's reply.  The court considers Convoyant's motions to strike before
2  considering DeepThink's motion.

3  **A.      Motions to Strike**

4  Convoyant moves to strike Exhibits A, B, and D to the declaration of DeepThink's
5  CEO Richard Aday (Resp. at 6-7; *see* Aday Decl. ¶ 2, Ex. A; *id.* ¶ 3, Ex. B; *id.* ¶ 6, Ex.
6  D) and Exhibit A to the declaration of DeepThink's attorney Christopher M. Reed along
7  with "all associated argument surrounding the same" (Surreply at 1-3; Reed Decl. (Dkt. #
8  22) ¶¶ 1-2, Ex. A).  Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit
9  or declaration used to support or oppose a motion must be made on personal knowledge,
10 set out facts that would be admissible in evidence, and show that the affiant or declarant
11 is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The court
12 considers each challenged document in turn.

13          1.      Aday Declaration

14 First, Convoyant moves to strike Exhibit A of Richard Aday's declaration, which
15 purports to be a copy of an article published by Convoyant and retrieved from the
16 ResNexus website on September 10, 2021.  (Aday Decl. ¶ 2, Ex. A (the "ResNexus
17 article").)  Convoyant contends that the court must strike the ResNexus article as
18 irrelevant and misleading because the declaration presents a quote from the article "as
19 including ResNexus as a provider who 'won't give you your data,' when in reality, this
20 interjection is an editorial comment by Deep[T]hink."  (Resp. at 6 (citing Aday Decl.
21 ¶ 2).)  Richard Aday states that "ResNexus notes on their website that 'there is no data
22 transfer method out there that is guaranteed to be 100% fool-proof <u>if your current</u>

1 software [e.g., ResNexus] is determined to make your exit difficult." (Aday Decl. ¶ 2
2 (emphasis and parenthetical in original).)  The court agrees that this statement does not
3 accurately represent the contents of the article, which does not refer to ResNexus as
4 software that is "determined to make [the Subscriber's] exit difficult."  (*See* ResNexus
5 article.)  The court, however, DENIES the motion to strike the ResNexus article as moot
6 because the court does not consider the article (or Richard Aday's statements about it) to
7 be material to its decision on DeepThink's motion.

8       Second, Convoyant moves to strike Exhibit B to Richard Aday's declaration,
9 which purports to be a copy of an email "between Mark Jackson and ResNexus
10 representatives dated April 11, 2013."  (Aday Decl. ¶ 3, Ex. B.)  Convoyant contends that
11 the court must strike this exhibit because it has not been properly authenticated.  (Resp. at
12 6.)  DeepThink responds in its reply that the email is "from ResNexus to its then-
13 Subscriber" and accuses Convoyant of "ignorantly questioning who Mark Jackson is."
14 (Reply at 3-4.)  DeepThink does not, however, provide any additional information
15 regarding Richard Aday's personal knowledge of the authenticity of the email.  (*See id.*)
16 Richard Aday does not explain how he came to possess the email or how he is certain
17 that the purported email between Mr. Jackson and ResNexus representatives is what he
18 claims it to be.  (*See* Aday Decl. ¶ 3.)  Therefore, the court agrees with Convoyant that
19 the email is not properly authenticated.  Accordingly, the court GRANTS Convoyant's
20 motion to strike and STRIKES Exhibit B to Richard Aday's declaration.

21       Third, Convoyant moves to strike Exhibit D to Richard Aday's declaration which
22 is an unsigned cease and desist letter dated May 11, 2018, from attorney George L.

Chingas, Jr., to Richard Aday and Alfred Aday.  (Resp. at 7; May 2018 Letter.)  Convoyant contends that the court must strike the May 2018 Letter because it is not based on Richard Aday's personal knowledge and "is being misconstrued by Deep[T]hink to reach improper conclusions of law."  (Resp. at 7.)  DeepThink points out that the letter was addressed to Richard Aday as CEO of DeepThink and that Richard Aday confirms in his declaration that DeepThink received the letter in May 2018.  (Reply at 3; *see* Aday Decl. ¶ 6.)  The court agrees with DeepThink that Richard Aday has adequately authenticated the May 2018 Letter for purposes of summary judgment.  Convoyant's disapproval of how DeepThink uses the letter in its motion is not a basis for striking the exhibit.  Therefore, the court DENIES Convoyant's motion to strike it.

### 2. Reed Declaration

Convoyant also moves to strike Exhibit A to the declaration of Christopher M. Reed and "all associated argument surrounding the same."  (Surreply at 1-3; June 2018 Letter.)  Mr. Reed authenticates the letter by stating that it is a record kept in his firm's ordinary course of business, maintained electronically in the firm's electronic file database, and produced to Convoyant with DeepThink's initial disclosures.  (Reed Decl. ¶¶ 1-2.)  DeepThink stated in its reply that it submitted the letter "to address [Convoyant's] false statements about the [May 2018] Letter."  (*See* Reply at 5 n.2.)

Convoyant argues that (1) "there is no evidence that [the] June [2018] letter was ever sent by Deep[T]hink's counsel, or received by Convoyant" and that "[i]t is telling" that DeepThink did not have the attorney who drafted the letter submit a declaration; (2) the letter is irrelevant because it "says nothing about Subscribers violating Subscriber

Agreements, nor does it discuss the scraping of password-protected information"; and (3) that DeepThink improperly makes a new argument in reply that the letter should have placed Convoyant on "actual or inquiry notice that Deep[T]hink was scraping the password-protected ResNexus system." (Surreply at 1-3.) The court finds that Mr. Reed adequately authenticated the June 2018 Letter as a business record and that it was not improper for DeepThink to provide it with its reply in response to Convoyant's arguments about the significance of the May 2018 Letter. Therefore, the court DENIES Convoyant's motion to strike the June 2018 Letter and associated argument.

**B.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an

essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

C. **CFAA and SCA Claims**

DeepThink moves for summary judgment on Convoyant's claims under the CFAA and SCA based on conduct that occurred before March 8, 2019—that is, two years before Convoyant filed its complaint in this action. (Mot. at 7-8.) Claims that fall under the CFAA are subject to a two-year statute of limitations. 18 U.S.C. § 1030(g) ("No action may be brought . . . unless such action is begun within two years of the date of the act complained of or the date of the discovery of the damage"). Claims under the SCA are also subject to a two-year statute of limitations. 18 U.S.C. § 2707(f) ("A civil action . . . may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation"). Convoyant filed its complaint on March 8, 2021. (*See* Compl.) Thus, these provisions preclude Convoyant from recovering damages for statutory violations it discovered prior to March 8, 2019. *See Maddalena v. Toole*, No. 2:13-CV-4873-ODW, 2013 WL 5491869, at *4 (C.D. Cal. Oct. 1, 2013).

DeepThink contends that Convoyant knew as early as December 2016 that DeepThink was scraping the ResNexus system to obtain customer data. (Mot. at 8.) It

points to an email from a ResNexus representative to a former ResNexus subscriber stating, in relevant part, "We are not able to reopen your account for a data pull.  It is a violation of our subscriber agreement for a competitor to have access to our proprietary software."  (*Id.*; *see also id.* at 4 (quoting Aday Decl. ¶ 5, Ex. C ("December 2016 Email")).)  It further asserts that even if the December 2016 email does not establish Convoyant's knowledge of DeepThink's scraping, there can be no dispute that Convoyant was aware of that activity by either May 11, 2018 (when Convoyant sent the May 2018 Letter to DeepThink) or June 7, 2018 (when DeepThink sent the June 2018 Letter to Convoyant).  (*Id.* at 8; Reply at 5.)

Convoyant responds that neither the December 2016 Email nor the May 2018 Letter addresses the scraping of private information that is the basis of its claims in this lawsuit.  (Resp. at 8, 10.)  To the contrary, according to Convoyant, the December 2016 Email makes no mention of scraping (*id.* at 8), and the May 2018 Letter "addressed only Deep[T]hink's scraping of publicly available information from publicly available sources:  Convoyant's website, Subscriber websites, and the publicly available booking engine utilized by Convoyant at that time" (*id.* at 5; *see id.* at 10-12).  It contends that it did not learn of DeepThink's scraping of password-protected Subscriber information until the discussions between Nathan Mayfield and Richard Aday in September 2020—well within the two-year CFAA and SCA statutes of limitations.  (*Id.* at 12-13.)

Convoyant does not dispute that it was aware of DeepThink's scraping of publicly-available information before March 8, 2019.  (*See* Resp. at 10-12 (acknowledging knowledge of scraping of public information in 2018).)  Therefore, the

court GRANTS DeepThink's motion for summary judgment on Convoyant's claims based on that conduct, to the extent Convoyant asserts them. However, the court concludes, viewing the evidence in the light most favorable to Convoyant as the nonmoving party, that there are genuine issues of material fact regarding when Convoyant discovered that DeepThink was scraping private, password-protected Subscriber information from the ResNexus system. *See* Fed. R. Civ. P. 56(a). The court agrees with Convoyant that the December 2016 Email, the May 2018 Letter, and the June 2018 Letter do not refer to allegations of using an automated program to scrape password-protected Subscriber information in violation of Convoyant's Subscriber Agreements. (*See* Resp. at 8-9; *id.* at 10-12; Surreply at 2.) First, the December 2016 Email explains only that providing third-parties access to Subscriber accounts violates the Subscriber Agreement. (*See* December 2016 Email.) Second, the May 2018 Letter refers to scraping publicly-accessible property availability information in violation of the ResNexus website's Terms of Use; it does not refer to scraping of private information or violations of the Subscriber Agreement. (*See* May 2018 Letter.) Finally, the June 2018 Letter refers to the website Terms of Use and is ambiguous about whether DeepThink was scraping password-protected information or obtaining that information by other means. (*See* June 2018 Letter.) The audio of the September 2020 call between Nathan Mayfield and Richard Aday, viewed in the light most favorable to Convoyant, also supports Convoyant's argument that it did not learn that DeepThink was scraping "back office" data from the PMS until after May 8, 2019. (*See generally* J. Mayfield Decl. Ex. B.) Accordingly, because Convoyant has met its burden to raise genuine issues of

material fact regarding the date on which it discovered the scraping of private, password-protected information that underlies its CFAA and SCA claims, the court DENIES DeepThink's motion for summary judgment on those claims.[6]

## C.    UTSA Preemption

DeepThink asserts that Convoyant's claims under Washington and Utah law for tortious interference with contract or business expectancy, civil conspiracy, trespass to chattels, unjust enrichment, and violation of unfair competition statutes are preempted by the WUTSA and UUTSA.  (Mot. at 8-11.)  The UTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret."  RCW 19.108.900(1); Utah Code § 13-24-8.  It does not, however, displace "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret."  RCW 19.108.900(2)(a); Utah Code § 13-24-8.  Thus, in both Washington and Utah, when a plaintiff raises a civil claim alongside a UTSA claim, the court must determine whether the UTSA preempts the civil claim.

DeepThink argues that the court should apply a "fact-based" approach to analyzing UTSA preemption to determine whether Convoyant's tort and statutory claims

---

[6] DeepThink also argues in its reply that Convoyant should have discovered that DeepThink was scraping private Subscriber information in 2018.  (Reply at 6-8.)  That argument, however, is waived because DeepThink failed to raise it in its motion.  (*See* Mot. at 7-8); *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)); *see also Bridgham-Morrison v. Nat'l Gen. Assembly Co.*, No. C15-0927RAJ, 2015 WL 12712762, at *2 (W.D. Wash. Nov. 16, 2015) ("For obvious reasons, new arguments . . . presented for the first time on Reply . . . are generally waived or ignored.").  Even if the argument were not waived, DeepThink is not entitled to summary judgment because it has not met its burden to establish that there is no genuine issue of material fact regarding whether Convoyant should have discovered that DeepThink was scraping private Subscriber before March 8, 2019.  (*See* Reply at 6-8.)

are preempted. (*See* Mot. at 9 (citing *Thola v. Henschell*, 164 P.3d 524, 530 (Wash. Ct. App. 2007).) Under this test, courts "(1) assess the facts that support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim; and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim." *Thola*, 164 P.3d at 530; *see also CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 331 (Utah Ct. App. 2012). Convoyant also cites *Thola*'s fact-based preemption test. (*See* Resp. at 18.)

As this court recognized in *Bombardier, Inc. v. Mitsubishi Aircraft Corp.*, "'the preemptive scope of the UTSA is an unsettled issue in Washington.'" 383 F. Supp. 3d 1169, 1195 (W.D. Wash. 2019) (quoting *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252JCC, 2018 WL 2317606, at *2 (W.D. Wash. May 22, 2018)). The court observed that two recent Washington Court of Appeals decisions had declined to apply *Thola*'s fact-based approach in determining whether tort claims were preempted by the WUTSA. *See id.* at 1195-96 (citing *SEIU Healthcare Nw. Training P'Ship v. Evergreen Freedom Found.*, 427 P.3d 688, 693-94 (Wash. Ct. App. 2018), *rev. denied*, 435 P.3d 279 (Wash. 2019), and *Modumetal, Inc. v. Xtalic Corp.*, 425 P.3d 871, 883 (Wash. Ct. App. 2018), *rev. denied*, 432 P.3d 793 (Wash. 2019)). These cases held, instead, that the "leading case" in Washington regarding the preemptive scope of the WUTSA is *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 674 (Wash. 1987), which applied an "elements-based" approach to preemption. *See id.* (citing *SEIU Healthcare*, 427 P.3d at 694). Under the elements-based approach, "a common law claim is not preempted if the

elements require some allegation or factual showing beyond those required under the UTSA." *SEIU Healthcare*, 427 P.3d at 694. The Washington Court of Appeals determined that because the Washington Supreme Court had not overruled *Boeing*, the *Thola* fact-based test does not govern the analysis of whether a claim is preempted by the WUTSA. *See Bombardier*, 383 F. Supp. 3d at 1195-96 (citing *SEIU Healthcare*, 427 P.3d at 695). Thus, based on its reading of *SEIU Healthcare* and *Modumetal*, the court declined to apply *Thola*'s fact-based approach to preemption, even though both parties urged the court to do so:

> The court is persuaded by *SEIU Healthcare* that Washington courts should apply the elements analysis for UTSA preemption, rather than factual preemption. Although courts in this district have applied factual preemption, that is only because "the court's best prediction w[as] that the Washington Supreme Court would embrace [*Thola*'s] view . . . if it were called upon to make a choice between those views." *T-Mobile USA* [*v. Huawei Device USA, Inc.*], 115 F. Supp. 3d [1184,] 1199 [W.D. Wash. 2015]. *SEIU Healthcare* clarifies that the Washington Supreme Court has made a choice between those views, and it is not up to this court to overrule that choice. Thus, the court will analyze any preemption arguments in this case under the elements approach.

*Bombardier,* 383 F. Supp. 3d at 1196; *see also Inteum Co., LLC, v. Nat'l Univ. of Singapore*, 371 F. Supp. 3d 864, 871-72 (W.D. Wash. 2019) (holding that because *Boeing*, rather than *Thola*, governed the preemption inquiry, the plaintiff could "support its breach of contract and trade secret misappropriation claims with the same operative facts").

*Bombardier* and *Inteum* involved only Washington claims and preemption under the WUTSA. *See Bombardier*, 383 F. Supp. 3d at 1195-96; *Inteum*, 371 F. Supp. 3d at

871-72.  This case, however, involves claims brought under both Washington and Utah law, and DeepThink argues for preemption of the Washington claims under the WUTSA and the Utah claims under the UUTSA.  Although it may be "unsettled" in Washington whether the fact-based or element-based approach should be applied in determining WUTSA preemption, *see Bombardier,* 383 F. Supp. 3d at 1195, there does not appear to be a dispute in Utah courts that the fact-based approach applies to the UUTSA preemption analysis.  *See, e.g.*, *CDC Restoration & Constr.,* 274 P.3d at 331; *Smart Surgical, Inc. v. Utah Cord Bank, Inc.*, No. 2:20-CV-00244-JNP, 2021 WL 734954, at *4 (D. Utah Feb. 25, 2021).[7]  Applying two different tests to determine whether Convoyant's Washington and Utah claims are preempted by the UTSA—tests that may very well yield different results[8]—is contrary to the uniformity goals of the UTSA.  *See* RCW 19.108.910 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."); Utah Code § 13-24-9 (same); *PTP OneClick, LLC v. Avalara, Inc.*, No.

---

[7] Indeed, most jurisdictions that have enacted the UTSA appear to follow the fact-based approach to analyzing preemption.  *See, e.g.*, *Int'l Paper Co. v. Stuit*, No. C11-2139JLR, 2012 WL 1857143, at *7-*8 (W.D. Wash. May 21, 2012) (citing cases).

[8] *Compare, e.g.*, *Int'l Paper Co.*, 2012 WL 1857143, at *6 (applying fact-based approach and finding tortious interference claim preempted because plaintiffs could not establish one of the five elements of the claim absent the allegation that defendants wrongfully used trade secrets), *with LaFrance Corp. v. Werttemberger*, No. C07-1932Z, 2008 WL 5068653, at *7-*8 (W.D. Wash. Nov. 24, 2008) (applying elements-based approach and finding conspiracy claim was not preempted because "conspiracy requires an element in addition to that required to make out a UTSA cause of action"); *see also T-Mobile*, 115 F. Supp. 3d at 1198-99 (applying *Thola*'s fact-based preemption approach to dismiss plaintiff's tortious interference claim and noting that the claim would have survived under the elements-based approach).

C19-0640JLR, 2020 WL 4729174, at *4 (W.D. Wash. May 27, 2020) ("The Uniform Trade Secrets Act is to be interpreted to promote uniformity across jurisdictions.").

In its reply, DeepThink acknowledges that the law regarding WUTSA preemption is "somewhat unsettled" in Washington. (Reply at 8 (citing *SEIU Healthcare*, 427 P.3d at 695).) It argues that because *Boeing* dealt with contractual claims rather than tort claims, it does not conflict with *Thola*. (*Id.* at 9.) The *SEIU Healthcare* court, however, noted that the test applied in *Boeing* to determine that the plaintiff's breach of confidentiality claim "resemble[d] an elements-based analysis more than the 'factual preemption'" test adopted in *Thola*. (*SEIU Healthcare*, 427 P.3d at 695.) Thus, it concluded that "'[u]ntil or unless the Washington Supreme Court overrules *Boeing* and adopts the *Thola* analysis, *Boeing* controls.'" (*Id.* (quoting *Modumetal*, 425 P.3d at 882).) In light of the Washington Court of Appeals's express rejection of the *Thola* analysis, the court declines to apply *Thola* in this case. *See Bombardier*, 383 F. Supp. 3d at 1196 (noting that "it is not up to this court to overrule" the Washington Supreme Court's choice of the elements-based analysis).

Accordingly, the court DEFERS ruling on DeepThink's motion for summary judgment based on UTSA preemption of Convoyant's tort and unfair competition claims. The court ORDERS the parties to submit simultaneous supplemental briefs no more than eight (8) pages in length regarding whether the court should certify to the Washington Supreme Court the question of whether the *Thola* fact-based approach or the *Boeing* elements-based approach applies when analyzing WUTSA preemption. The parties shall file their supplemental briefs no later than December 17, 2021.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part, DENIES in part, and DEFERS in part DeepThink's motion for partial summary judgment (Dkt. # 15).  The court GRANTS DeepThink's motion for summary judgment on Convoyant's claims based on scraping of publicly-accessible information; DENIES DeepThink's motion for summary judgment on Convoyant's claims based on scraping of private, password-protected Subscriber information; and DEFERS RULING on DeepThink's motion for summary judgment based on WUTSA and UUTSA preemption.  The court ORDERS the parties to submit, by December 17, 2021, supplemental briefing of no more than eight (8) pages in length regarding the question set forth above.

Dated this 7th day of December, 2021.

JAMES L. ROBART
United States District Judge